**LEDYARD et al., Appellants,**

v.

**AUTO–OWNERS MUTUAL INSURANCE COMPANY, Appellee.**

[Cite as *Ledyard v. Auto–Owners Mut. Ins. Co.* (2000), 137 Ohio App.3d 501.]

Court of Appeals of Ohio,
Eighth District, Cuyahoga County.

No. 75703.

Decided April 10, 2000.

502

Summers & Vargas Co., L.P.A., William L. Summers and Edwin J. Vargas; Robert Ledyard, pro se, for appellants.

McNeal, Schick, Archibald & Biro and John C. Cubar, for appellee.

---

JAMES D. SWEENEY, Judge.

Plaintiffs-appellants Robert and Deborah Ledyard, husband and wife, appeal from the granting of summary judgment in favor of defendant-appellee, Auto-Owners Mutual Insurance Company, and the simultaneous denial of summary judgment for the Ledyards, in this declaratory judgment action. For the reasons adduced below, we reverse the granting of summary judgment in favor of the insurer, enter judgment in favor of the plaintiffs, and remand to the trial court for further proceedings.

In July 1996, the Ledyards procured a homeowners' insurance policy from appellee for their home at 3169 Kinsman Road, North Bloomfield, Ohio. North Bloomfield is located at the intersection of State Routes 45 and 87 in Trumbull County. On January 19, 1997, the home was ravaged by fire and sustained substantial damage. Pursuant to the policy of insurance, the parties subsequently came to an agreement on the cash value for the home and personal property. However, the parties could not agree on certain claims made for additional living expenses under the policy. The two contested items of additional living expenses are the following: (1) $1,155 (at $9 per day) for the storage of Mr. Ledyard's 1979 Chevrolet Corvette[1]; and (2) $3,130.85 for the care and feeding of the Ledyards'

---

1. Before the fire, the Corvette was garaged in the home's two-and-one-half-car attached garage.

two horses by a private service while the home was uninhabitable. The horses stayed on the Ledyards' property before and after the fire.

The lone assignment of error is whether the trial court erred in granting summary judgment in favor of the insurer and denying summary judgment for the insureds.

The standard of review relative to a summary judgment ruling was recently stated by this court:

"The standard for granting a motion for summary judgment is set forth in Civ.R. 56(C). In applying this rule, the Ohio Supreme Court has consistently held that, before such a motion can be granted, the moving party must show that (1) there is no genuine issue of fact; (2) the moving party is entitled to judgment as a matter of law; and (3) it appears from the evidence that reasonable minds can come to but one conclusion, and viewing such evidence most strongly in favor of the nonmoving party, that conclusion is adverse to the party against whom the motion for summary judgment is made. *Mootispaw v. Eckstein* (1996), 76 Ohio St.3d 383, 667 N.E.2d 1197; *Welco Industries, Inc. v. Applied Cos.* (1993), 67 Ohio St.3d 344, 617 N.E.2d 1129; *Osborne v. Lyles* (1992), 63 Ohio St.3d 326, 587 N.E.2d 825.

"A motion for summary judgment forces the nonmoving party to produce evidence on issues for which that party bears the burden of production at trial. *Wing v. Anchor Media, Ltd. of Texas* (1991), 59 Ohio St.3d 108, 570 N.E.2d 1095, syllabus. The nonmovant must also present specific facts and may not merely rely upon the pleadings or upon unsupported allegations. *Shaw v. J. Pollock & Co.* (1992), 82 Ohio App.3d 656, 612 N.E.2d 1295. When a party moves for summary judgment supported by evidentiary material of the type and character set forth in Civ.R. 56(E), the opposing party has a duty to submit affidavits or other material permitted by Civ.R. 56(C) to show that there is a genuine issue for trial. *Harless v. Willis Day Warehousing Co.* (1978), 54 Ohio St.2d 64, 8 O.O.3d 73, 375 N.E.2d 46.

"In *Dresher v. Burt* (1996), 75 Ohio St.3d 280, 662 N.E.2d 264, the Ohio Supreme Court discussed the standard to be applied when reviewing motions for summary judgment. The court stated:

" 'Again, we note that there is no requirement in Civ.R. 56 that any party submit affidavits to support a motion for summary judgment. See, *e.g.,* Civ.R. 56(A) and (B). There is a requirement, however, that a moving party, in support of a summary judgment motion, specifically point to something in the record that comports with the evidentiary materials set forth in Civ.R. 56(C).' *Id.* at 298, 662 N.E.2d at 277.

"The court's analysis of an appeal from a summary judgment is conducted under a *de novo* standard of review. See *Maust v. Bank One Columbus, N.A.* (1992), 83 Ohio App.3d 103, 107, 614 N.E.2d 765, 768; *Howard v. Wills* (1991), 77 Ohio App.3d 133, 601 N.E.2d 515. No deference is given to the decision under review, and this court applies the same test as the trial court. *Bank One of Portsmouth v. Weber* (Aug. 7, 1991), Scioto App. No. 1920, unreported, 1991 WL 156416." *Tagliarina v. Tumino* (Oct. 28, 1999), Cuyahoga App. No. 74962, unreported, 1999 WL 980597, at *2–3.

 In construing a contract of insurance, we note the following:

"Where the terms of an insurance policy are clear and unambiguous, those terms must be applied to the facts without engaging in any construction. *Santana v. Auto Owners Ins. Co.* (1993), 91 Ohio App.3d 490, 494, 632 N.E.2d 1308, appeal dismissed (1994), 69 Ohio St.3d 182, 631 N.E.2d 123. When the policy terms have a plain and ordinary meaning, it is not necessary or permissible for a court to construe a different meaning. *Ambrose v. State Farm Fire & Cas.* (1990), 70 Ohio App.3d 797, 800, 592 N.E.2d 868, jurisdictional motion overruled (1991), 60 Ohio St.3d 708, 573 N.E.2d 671. In other words, 'the plain meaning of unambiguous language will be enforced as written.' *Mehl v. Motorists Mut. Ins. Co.* (1992), 79 Ohio App.3d 550, 554, 607 N.E.2d 897." *Nationwide Mut. Ins. Co. v. Finkley* (1996), 112 Ohio App.3d 712, 715, 679 N.E.2d 1189.

 Additionally, we also note the following:

"Insurance policies are generally interpreted by applying rules of contract law. *Burris v. Grange Mut. Cos.* (1989), 46 Ohio St.3d 84, 89, 545 N.E.2d 83, 88. If the language of the insurance policy is doubtful, uncertain, or ambiguous, the language will be construed strictly against the insurer and liberally in favor of the insured. *Faruque v. Provident Life & Acc. Ins. Co.* (1987), 31 Ohio St.3d 34, 31 OBR 83, 508 N.E.2d 949. However, the general rule of liberal construction cannot be employed to create an ambiguity where there is none. *Karabin v. State Auto. Mut. Ins. Co.* (1984), 10 Ohio St.3d 163, 166–167, 10 OBR 497, 499–500, 462 N.E.2d 403, 406–407. If the terms of a policy are clear and unambiguous, the interpretation of the contract is a matter of law. *Inland Refuse Transfer Co. v. Browning–Ferris Industries of Ohio, Inc.* (1984), 15 Ohio St.3d 321, 15 OBR 448, 474 N.E.2d 271." *Progressive Ins. Co. v. Heritage Ins. Co.* (Cuyahoga 1996), 113 Ohio App.3d 781, 783–784, 682 N.E.2d 33, 35.

The policy of insurance under review provides for additional living expenses at Special Form 3, Section I, "Property Protection" Coverage D—Additional Living Expenses and Loss of Rents:

"If a covered loss makes your residence premises unfit to live in, we will pay, at your option, either:

"1. the reasonable increase in your living expenses necessary to maintain your normal standard of living while you live elsewhere * * *."

The term "residence premises" means:

"a. the one or two family dwelling where you reside, including the building, the grounds and other structures on the grounds; or

"b. that part of any other building where you reside, including associated grounds and structures;

"and which is described in the Declarations."

The policy's definitions section also defines the term "you" and "your" as "the insured named in the Declarations and his or her spouse if living in the same household."

The insurer, in seeking summary judgment and now on appeal, bases the denial of these claims for additional living expenses solely on the following exclusionary provision at Special Form 3, Section I "Property Protection," Conditions, paragraph 8:

"8. *NO BENEFIT TO BAILEE*. This insurance will not, in any way, benefit any person or organization who may be caring for or handling property for a fee."

The insurer, without any citation of legal authority, notes that the people who cared for the car and the horses were bailees; therefore, coverage under the insurance policy could not be used to benefit them.

A fair reading of the bailee-exclusion provision leads us to the conclusion that its language is confusing and ambiguous. It is not clear whether coverage is excluded for property of which the insured is a bailee or whether the exclusion exists for one who is a bailee of an insured's property. *Gaeth v. Woodville Mut. Ins. Assn.* (Dec. 16, 1983), Ottawa App. No. OT–83–20, unreported, 1983 WL 2327, at 3 (similar bailee-exclusion language determined to be ambiguous). A strict application of the exclusion could lead to the absurd result of no coverage at all under the policy for any claims whatsoever. For example, a claim settlement payment made under the policy to an insured by the insurer could be construed as property under the existing bailee exclusion since the term "property" is not defined by the policy. An insured who accepts a claims payment from the insurer and then deposits that settlement check with the insured's bank would be barred from receiving coverage for the claim because the insured's bank, which charges a fee for maintaining an account and retains a benefit thereby in accepting and "handling" funds for deposit, is acting as a bailee for the settlement funds. An equally strange outcome would result for property insured under the policy. If a damaged piece of insured property is sent to be repaired by a professional service for a fee, the repairer, a bailee, could not be paid by the insured with funds received from the insurance company pursuant to

the policy. Putting aside the absurdity of this example, one must wonder whether the insurance company would look favorably upon being placed in the position of monitoring, ad infinitum, its insureds' financial decisions involving the future use of claim-settlement proceeds. After all, the insurer cannot permit any person or entity who handles property for a fee to benefit from the coverage under the policy. These results, which abrogate all coverage, cannot be the intended purpose of the bailee exclusion.

Having concluded that the bailee exclusion is ambiguous, we are required to liberally construe the policy language in favor of the insureds. *Faruque v. Provident Life & Acc. Ins. Co., supra.* Accordingly, we construe the bailee exclusion to apply to an insured who acts as a bailee for the property of others. Since the insureds herein were acting as bailors and not bailees, the Ledyards must be afforded coverage for the two claims for the additional living expenses claims at issue under the policy. The assignment of error is sustained.

The judgment is reversed and vacated, judgment is entered in favor of plaintiffs-appellants, and the cause is remanded to the trial court for proceedings relative to the relief requested (attorney fees, costs, etc.) as part of the declaratory judgment action.

*Judgment reversed*
*and cause remanded.*

SPELLACY, J., concurs.

KARPINSKI, P.J., concurs in judgment only.