OPINION
{¶ 1} Jean Johnson, appellant herein, appeals the judgment of the Marion County Court of Common Pleas granting summary judgment in favor of appellee Ohio Government Risk Management Plan (hereinafter "Ohio Plan").
 {¶ 2} The complicated facts and procedural history of this case are as follows. On June 5, 1997, James Johnson, husband of appellant and volunteer firefighter with the Village of New Bloomington, responded to an emergency call. The call resulted from an accident in which Andrew Bigler, an underinsured motorist, lost control of his vehicle and struck a utility pole in Marion County. James Johnson was a member of one of several rescue squads attempting to remove Mr. Bigler from his vehicle in the ditch where it had landed. At some point during the extrication, another rescuer, Brian Roshon, came in contact with a power line hanging low as a result of the accident. This contact caused the electrocution of James Johnson and injured several other rescuers.
 {¶ 3} On June 4, 1999, appellant filed an action in the Franklin County Court of Common Pleas against the estate of Andrew Bigler as decedent's wife and the executor of his estate. The suit included claims against Brian Roshon, the Scioto Valley Fire Department who employed Roshon, and Rural Metro Ambulance Co.(hereinafter "Rural Metro"), which also assisted in the rescue. Appellant's suit claimed these parties were negligent in the rescue operations causing or contributing to cause the death of James Johnson.
 {¶ 4} Appellant's complaint also included claims against Westfield Insurance Co. and Farmers Insurance of Columbus, Inc. At the time of the accident, appellant had a personal automobile liability policy with Westfield Insurance Co. Also at the time of the accident, Joy Watkins, decedent's daughter, was individually insured by Westfield. Decedent's son, John Johnson, had a personal automobile liability policy with Farmers Insurance. Appellant and her children requested declaratory relief in determining the insurance companies' contractual obligations under the policies.
 {¶ 5} On March 30, 2000 appellant joined the Ohio Plan as a party to the action. The cause of action against the Ohio Plan alleged that the beneficiaries of James Johnson's estate, which included appellant, John Johnson, Joy Watkins as well as decedent's three grandchildren, were entitled to UIM benefits pursuant to the commercial auto policy issued by the Ohio Plan to decedent's employer, the Village of New Bloomington.
 {¶ 6} Appellant subsequently settled her claims with the estate of Andrew Bigler for payment of $100,000 and executed an indemnity agreement and a covenant not to sue the Bigler estate or its insurer, Allstate Insurance Company.
 {¶ 7} Appellant and Joy Watkins settled with Westfield for $225,000 and executed a release.
 {¶ 8} Appellant also received a default judgment in the amount of $2,281,307 against Rural Metro and thereby voluntarily dismissed Farmers Insurance, Scioto Valley Fire Department and the Ohio Plan from the action, leaving only Rural Metro as a party and the default judgment against Rural Metro as the only claim.
 {¶ 9} Thereafter, appellant settled her claim against Rural Metro for a total payment of $200,000. Rural Metro paid $100,000 and $100,000 was paid by USFG, Rural Metro's insurer, who represented that it had limits of coverage up to $5,000,000. As part of the settlement, appellant executed a release of claims with Rural Metro and USFG on February 5, 2002.
 {¶ 10} On December 27, 2001, prior to executing the release of claims with Rural Metro and USFG, appellant initiated another action against the Ohio Plan. This claim was brought in the Marion County Court of Common Pleas. Once again appellant claimed that the decedent's beneficiaries were entitled UIM coverage under the commercial auto policy issued by the Ohio Plan to decedent's employer.
 {¶ 11} Both appellant and appellee filed motions for summary judgment. On May 8, 2003, the Marion County Court of Common Pleas found that the liability of the Ohio Plan, if any, was limited to $1,000,000; that if liable to the appellant, the Ohio Plan would be entitled to a set off in the amount of $579,000[1]; and that because the appellant settled claims against others without notice to or consent by the Ohio Plan, the appellant had breached provisions of the commercial auto policy. Therefore, the decedent's beneficiaries were not entitled to UIM benefits.
 {¶ 12} It is from this decision that appellant appeals, asserting two assignments of error for our review. For clarity of analysis, we will address the appellant's assignment of error in reverse order.
 ASSIGNMENT OF ERROR NO. II The trial court erred in granting Appellee's motion for summaryjudgment because pursuant to the holding of Ferrando v. Auto-Owners Mut.Ins. Co. (2002), 98 Ohio St.3d 186, Appellant rebutted Appellee's claimedpresumption of prejudice as required by law.
 {¶ 13} Appellate review of summary judgment determinations is conducted on a de novo basis. Ledyard v. Auto-Owners Mut. Ins. Co.
(2000), 137 Ohio App.3d 501,505. Therefore, we consider the motion independently and without deference to the trial court's findings. Schuchv. Rogers (1996), 113 Ohio App.3d 718, 720.
 {¶ 14} Under Ohio law, a court may not grant a motion for summary judgment unless the record demonstrates: (1) no genuine issue of material fact remains to be litigated, (2) the moving party is entitled to judgment as a matter of law and (3) after considering the evidence most strongly in favor of the non-moving party, reasonable minds could come but to one conclusion and that conclusion is adverse to the party against whom the summary judgment motion is made. Civ.R. 56(C).
 {¶ 15} The appellant argues herein that the grant of summary judgment was not proper as she did not breach the "prompt notice" provision of the commercial auto policy issued by the Ohio Plan. Appellant claims she provided reasonable notice to the Ohio Plan upon learning that the Village of New Bloomington held an insurance policy providing UM/UIM coverage issued by appellee. The Ohio Plan argues, however, that it has made no claim that appellant violated the "prompt notice" provision. Rather, the Ohio Plan contends that the appellant breached the "consent to settle" clause when she settled her claims with the Bigler estate and Rural Metro without notifying the Ohio Plan. We agree with the Ohio Plan that the "consent to settle" provision is most germane to our determination.
 {¶ 16} On appellate review, a court evaluating whether a consent-to-settle or subrogation provision in a UIM policy was breached must conduct a two-step inquiry. Ferrando v. Auto Owners Mut. Ins. Co.
(2002), 98 Ohio St.3d 186, 208. The first step is to determine whether a breach actually occurred. Id. If no breach occurred, the inquiry is at an end and UIM coverage must be provided. However, if a breach did occur, the second step is to decide whether the insurer was prejudiced. Id. If the insurer was prejudiced, no UIM coverage will be available.
 {¶ 17} In the case sub judice, the Ohio Plan policy contains a "consent to settle" exclusion which states, "This insurance does not apply to: 1) Any claim settled without our consent." As we recently stated in Houser v. Motorists Ins. Co., Auglaize App. No. 2-02-02, 2002-Ohio-2845:
The words of an insurance policy that is [sic] clear and unambiguous onits face must be given their plain and ordinary meaning. If consent isrequired under a policy and is not obtained, no coverage exists. In thepresent case, the policy clearly and unambiguously states that UIMinsurance does not apply to claims settled without [the insurer's]consent." Id. at ¶ 47 (citations omitted).
 {¶ 18} The Ohio Plan policy in the present case clearly and unambiguously states that UIM insurance will not apply to claims settled without the insurer's consent. It is further undisputed that appellant settled with the Bigler estate and Rural Metro without the consent of the Ohio Plan. Appellant, therefore, breached the "consent to settle" provision. Because a breach did occur, we must determine whether the Ohio Plan was prejudiced by that breach.
 {¶ 19} Generally, the focus in the prejudice inquiry is directed to whether the tortfeasor had enough assets "beyond the limits of his or her liability insurance policy that the failure of the insured to obtain the consent of the insurer prior to the settlement and release of the tortfeasor destroyed the insurer's ability to recover additional damages." Ferrando, 98 Ohio St.3d at 196-197. However, if a breach occurred, a presumption of prejudice to the insurer arises which the insured party bears the burden of presenting evidence to rebut. Id. at 208.
 {¶ 20} Appellant argues that although she settled with the Bigler estate prior to joining the Ohio Plan as a party to the action, the appellant rebutted the presumption of prejudice by demonstrating that Bigler was essentially insolvent and lacked adequate assets to pursue. We agree that appellant provided enough evidence for the appellee to conclude that Bigler lacked adequate assets to pursue collection.[2]
However, appellant offered no evidence to rebut the presumption of prejudice to the Ohio Plan that resulted from the settlement with Rural Metro.
 {¶ 21} Appellant claims she was under no duty to provide evidence to rebut the presumption that the settlement with Rural Metro did not prejudice the Ohio Plan because the Ohio Plan had no right of subrogation against Rural Metro. Appellant specifically claims that she is only obligated to present evidence as to the motorist tortfeasor. Rural Metro's liability, appellant asserts, arises from its agent's contribution to the death of James Johnson, not from the accident itself.
 {¶ 22} After reviewing the record and the insurance policy language, we are unable to accept appellant's distinction. As previously stated, the "consent to settle" provision in the Ohio Plan policy provides an exclusion for "Any claim settled without our consent." (Emphasis added.) The policy language does not only exclude settlements with the motorist tortfeasor, but rather for any claim. This language is clear and unambiguous and, as such, we are required to give it its plain and ordinary meaning. The appellant breached the "consent to settle" provision by not notifying and obtaining the consent of the Ohio Plan prior to executing the settlement with Rural Metro. The appellant did not provide any evidence to rebut the presumption of prejudice.[3] As a result of the appellant's failure to obtain the consent of the Ohio Plan prior to the settlement with Rural Metro, the appellant is not entitled to UIM coverage under the Ohio Plan commercial auto policy. Accordingly, we find that the trial court's grant of summary judgment was proper.
 {¶ 23} Appellant's second assignment of error is overruled.
 ASSIGNMENT OF ERROR NO. I The trial court erred in granting Ohio Government Risk and ManagementPlan ("OGRMP/Appellee) a set-off of all settlements received in theunderlying case, Johnson v. Ohio Government Risk and Management Plan,Case No. 01-CV0699, Marion County Court of Common Pleas and previouslyfiled (underlying) case Jean H. Johnson, etc., et al. v. Kelleen Bigler,etc., et al., Case No. 99CVC-06-4571, Franklin County Court of CommonPleas, against Appellee's limits of coverage because Appellee, as anunderinsured motorist ("UIM") carrier, is only entitled to set-offagainst its limits of coverage in the amount of the underinsuredmotorist/tortfeasor's limits of bodily injury which was in the amount ofone hundred thousand dollars ($100,000) in this case.
 {¶ 24} Having found herein that appellant is not entitled to coverage under the Ohio Plan commercial auto policy due to the breach of the "consent to settle" provision, it is not necessary for us to decide whether the set-off was proper, as the issue is moot.
 {¶ 25} Accordingly, appellant's first assignment of error is overruled.
 {¶ 26} For the reasons set forth herein, the judgment of the Marion County Court of Common Pleas is hereby affirmed.
Judgment affirmed.
BRYANT, P.J., and SHAW, J., concur.
[1] The trial court's calculation of set-off was based in part on amounts the appellant had previously received in settlement. As noted above, appellant settled for $100,000 with the Bigler estate, $200,000 with Rural Metro and $225,000 with Westfield Insurance Co. Also included in the calculation was $54,000 that the Ohio Plan had previously paid in settled claims of other rescuers.
[2] Appellant presented an affidavit from Rick Marsh, counsel for Bigler's estate, which established that Bigler's automobile liability coverage under his policy with Allstate Insurance Co. had been exhausted as a result of the collision. Appellant also produced evidence that at the time of Bigler's death his estate was worth $65,575.44.
[3] While we decline to decide whether the Ohio Plan was, in fact, prejudiced as a result of the breach, we note that Rural Metro's insurer, USFG, represented it had limits of coverage up to $5,000,000.00. Since the commercial auto policy issued by the Ohio Plan had coverage up to $1,000,000, USFG's limits of coverage imply that sufficient assets may have existed for the Ohio Plan to be subrogated for any amount paid out under its commercial auto policy.